FROM : INTRACOASTAL YACHT CLUB APTS      FAX NO. :3059483445      Dec. 16 2006 05:48PM P1





Exhibit No.
P-2

# KINNEY RECRUITING
*excellence in legal search & placement*

## ASSOCIATE RECRUITER EMPLOYMENT AGREEMENT

THIS AGREEMENT is entered into and effective on May 1, 2006 between Kinney Recruiting, L.P. (the "Company") and Evan Jowers (the "Employee");

The parties agree as follows:

### 1. DEFINITIONS

The following terms shall have the following meanings as used in this agreement:

1.1  The "Office" means the office of the Company at which the employee is then employed.

1.2  "Personnel placement service business" means the business of finding positions of employment or partnership opportunities for persons, locating personnel or partners for clients, and related activities.

1.3  "Associate Recruiter" means the occupation of finding positions of employment or partnership opportunities for persons, locating personnel or partnership for clients, and related activities and includes the following activities: soliciting employers to become clients of the Company, contacting clients to ascertain their personnel or partner requirements, assisting clients in fulfilling their personnel or partner requirements, seeking candidates for positions of employment or partnership with clients, obtaining employment or partnership opportunities for candidates of the Company, interviewing candidates for employment or partnership with clients, and exercising discretion in the choice of the candidates to refer to clients.

1.4  "Client" means an employer which has given the Company a job order or search assignment, or which the Company has solicited for a job order or search assignment, and includes the personnel and partners of such an employer.

1.5  "Candidate" means a person who has provided the Company with the candidate's job history information, resume, or an application, for purposes of finding a position of employment or a partnership opportunity.

1.6  "Company's Proprietary Information" means the Company's confidential information, including but not limited to client and candidate lists, interim employees, personal information supplied by candidates and interim employees, information concerning the identity of clients and their personnel, the personnel and partnership needs and requirements of clients, terms and conditions under which the Company deals with

Initialed                                    1                           Initialed
Company                                                                  Employee

Exhibit 2 to Original Complaint                          Page 1 of 11

FROM : INTRACOASTAL YACHT CLUB APTS        FAX NO. :3059483445        Dec. 16 2006 05:48PM  P2

clients, billing rates, profit margins, financial data, applications, resumes, candidate and employee data sheets, job orders, search assignments, planners, invoices, manuals, computer programs and data, Company personnel information, audio and video cassettes, records, and any information received from a client or candidate under an expectation of confidentiality. The terms "customer list" and "candidate list" are not limited to physical writings or compilations. "Customer lists" and "candidate lists" include information contained in or reproduced from the memory of an employee. The Company's Proprietary Information includes all such information developed by its employees, whether or not during working hours, that is related to Company's business. The Company's Proprietary Information may also be trade secrets.

## 2. THE COMPANY

2.1   The Company hereby employs the Employee as an Associate Recruiter for the Company's personnel placement service business at the Company's Office.

2.2   The Company will pay all of the usual and ordinary expenses involved in the operation of the Office.

2.3   The Company will provide the Employee with Proprietary Information during the Employee's employment.

2.4   The Company will provide training for the Employee.

## 3. ACKNOWLEDGEMENTS

The employee acknowledges that:

3.1   The Company will enable the Employee to contact the Company's clients and candidates and develop relationships with them on behalf of the Company.

3.2   The Employee has been provided access to, and has received, the Company's Proprietary Information, and understands that Employee will continue to have access to the Company's Proprietary Information throughout Employee's employment. In consideration of the Company's provision of Proprietary Information, Employee acknowledges and agrees that during Employee's service and thereafter, pursuant to this agreement, Employee will hold in strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Proprietary Information, except as such disclosure, discussion, transmission, use, or publication may be required in connection with Employee's service to the Company, or unless Robert Kinney expressly authorizes such in writing.

3.3   The protection of the Company's Proprietary Information, good will, and relationships with its clients and candidates is vital to the continued successful operation of the Company's business.

3.4   The Company has expended and will expend considerable time and money procuring and training the Employee, providing facilities for the conduct of its business, and establishing relationships and good will with existing and prospective clients and candidates.

_R I?_
Initialed
Company

2

_E P J_
Initialed
Employee

Exhibit 2 to Original Complaint                                                    Page 2 of 11

FROM : INTRACOASTAL YACHT CLUB APTS       FAX NO. :3059463445         Dec. 16 2005 05:48PM  P3

3.5  The replacement of an Associate Recruiter who has developed such relationships and good will with the Company's candidates and clients on behalf of the Company requires the Company to expend additional time and money.

3.6  The Employee need not accept employment with the Company; there are other employment opportunities available to the Employee; the Employee has freely chosen to enter this Agreement; and entry into, adherence to, and compliance with this Agreement and its terms are conditions of the Employee's initial and continued employment with the Company.

3.7  The position of Associate Recruiter entails trust and confidence by the Company and requires the highest degree of loyalty, honesty, and integrity from the Employee.

3.8  The duties of an Associate Recruiter are confidential, sensitive, and professional in nature, and require the Employee to function in an independent, discretionary, administrative capacity with regard to selecting candidates for referral, selecting clients, advising candidates and clients, assisting them in negotiations, and otherwise developing, managing, and controlling the areas of the Company's business for which the Employee is assigned responsibility.

3.9  The Employee has been advised of the Company's policies against discrimination and harassment, and that the Company expects all employees to treat each other with dignity and respect.

3.10 If the Employee's employment is terminated, the Employee will be able to earn a livelihood without violating the restrictions contained in this Agreement and the Employee's ability to earn such a livelihood without violating such restrictions is a material condition to the Company's employment of the Employee.

## 4. THE ASSOCIATE RECRUITER

4.1  The Employee accepts the position of employment with the Company as an Associate Recruiter.

4.2  The Employee represents that the Employee is not a party to any contract or other obligation, which would prevent the Employee from accepting employment as an Associate Recruiter or restrict the activities of the Employee.

4.3  The Employee shall devote the Employee's full working time to the Employee's activities as an Associate Recruiter in a manner, which will maintain and increase the Company's ethical, moral, and professional standards, good will, and reputation.

4.4  The Employee shall not engage in any other business activities in competition with the Company's personnel placement service business and shall not engage in any activity related to the personnel placement service business other than in benefit of the Company.

4.5  The Employee shall pay to the Company any payment received by the Employee from anyone in connection with the personnel placement service business.

4.6  The Employee will promptly deliver the Company's Proprietary Information to the Company at any time the Company requests it from the Employee.

Initialed
Company

3

Initialed
Employee

Exhibit 2 to Original Complaint                                      Page 3 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445     Dec. 16 2006 05:49PM P4

4.7  The Employee shall not enter into any contract, agreement or arrangement for or on behalf of the Company, except those made in the normal course of the Employee's duties as an Associate Recruiter in accordance with the Company's procedures, policies and directions.

4.8. The Employee authorizes the Company to notify any new employer or entity for whom the Employee provides services about the Employee's rights and obligations under this Agreement following the termination of the Employee's employment with the Company.

## 5. POLICY AGAINST DISCRIMINATION

5.1  The Employee shall screen and refer candidates for positions of employment only on the basis of the candidate's qualifications. The candidate's race, creed, color, religion, sex, age, national origin, handicap, disability, or other protected characteristics shall not be a factor in referral.

5.2  The Employee shall not accept a job order from any client, which contains any discriminatory provisions unless the client can provide evidence satisfactory to the Company that such discriminatory provision is a bona fide occupational qualification.

5.3  The Employee will not, in any manner whatever, code any forms or papers that would in any way indicate race, creed, color, religion, sex, age, national origin, disability, handicap, or other legally protected characteristic.

5.4  The Employee will quickly bring to the attention of the Company's management, any actions of any employee, which may be in violation of this policy

## 6. COMPENSATION

6.1  The Employee's compensation for the services rendered, as an employee of the Company shall be pursuant to the terms of exhibit A, which is attached to and made a part of this Agreement. Exhibit A may be modified from time to time as the Company, in its sole discretion, deems appropriate, provided that no such modification may be applied retroactively.

## 7. NON-DISCLOSURE COVENANTS

7.1  Upon termination of employee's employment, the Employee will not retain any copies of the Company's Proprietary Information. When the Employee's service with the Company is completed, Employee will immediately deliver to the Company all Proprietary Information, together with all copies thereof, and any other material containing or disclosing any Proprietary Information. Employee will also immediately deliver all Company property, including but not limited to laptops, pagers, cell phones, corporate credit cards, keys, and/or access cards. Employee further agrees that all property situated on the Company's premises and/or owned, leased, or licensed by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by personnel of the Company at any time with or without notice.

7.2  At all times during and after the Employee's employment, the Employee shall not use or disclose to any person the Company's Proprietary Information, except as such disclosure

Initialed Company     4     Initialed Employee

Exhibit 2 to Original Complaint                    Page 4 of 11

or use may be required in connection with the Employee's employment, or unless the Robert Kinney expressly authorizes such in writing.

## 8. NON-SOLICITATION COVENANTS

8.1 For a period of one year following the effective date of termination of the Employee's employment, the Employee shall not, in the course of the personnel placement service business, solicit or provide services to any candidate or client with whom the Employee had contact with, knowledge of, or access to during the twelve months immediately preceding the effective date of termination, and shall not assist any entity other than the Company in so doing.

8.2 For a period of one year following the effective date of termination of the Employee's employment, the Employee shall not solicit or hire away any employee of the Company, or any person whose employment with the Company has been terminated for less than six months, nor shall Employee induce, solicit, or otherwise encourage any supplier, independent contractor, or any other business relation of the Company, or in any way interfere with the relationship between any such employee, supplier, independent contractor, or other business relation and the Company (including, without limitation, making any negative or disparaging statements regarding the Company or its respective officers, directors, employees, or principals).

## 9. REMEDIES

9.1 The actual damages resulting from violation of Sections 7 and/or 8 of this Agreement by the Employee will be difficult or impossible to ascertain. In the event of such a violation, the Employee shall pay to the Company, upon demand, as liquidated damages, and not as a penalty, the following:

9.1.1 Any fee paid for services rendered in violation of Sections 7 and/or 8, whether paid to the Employee or to any other person, firm or entity; plus

9.1.2 All costs and expenses, including reasonable attorney's fees, incurred by the Company in the enforcement of its rights relating to such violation.

9.2. The liquidated damages will be in addition to any and all other remedies which the Company may have, including but not limited to injunctive relief.

9.3. The Company will suffer material and irreparable damage if the Employee violates Sections 7 and/or 8, which cannot be adequately compensated even by the liquidated damages provided for by this Section, and the Company would not have an adequate remedy at law for such a violation. Therefore, the Company shall be entitled, in addition to all other available remedies, to an immediate injunction to restrain any such violation. If any present or future statute of this State provides protections or remedies relating to proprietary information, confidential information, or trade secrets, which are greater than the protections and remedies, provided by this Agreement, then the Company shall also have the benefit of such additional statutory protections and remedies.

9.4. The one-year time periods referred to in Section 8 shall be extended to include any period of time during which the Employee engages in activities constituting a violation of that Section.

Initialed
Company

5

Initialed
Employee

Exhibit 2 to Original Complaint                                Page 5 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445     Dec. 16 2006 05:50PM P6

9.5. The obligations set forth in Sections 7 and/or 8 shall each be construed as agreements independent of any other provisions in this Agreement and the existence of any claim or cause of action of the Employee against Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the provisions of Sections 7 and/or 8 or relieve the Employee of any such obligations.

9.6. If the scope of enforceability of the restrictions contained in Section 8 is determined to be unreasonable, the court may modify and enforce such restrictions to the extent that they are found to be reasonable under the circumstances existing at that time.

## 10. INDEMNIFICATION

10.1 The Employee shall indemnify and save the company harmless from all claims, demands, and actions arising out of the Employee's breach of this Agreement, and shall reimburse the Company for all costs, damages and expenses, including reasonable attorney's fees, which the Company pays or becomes obligated to pay by reason of such activities or breach.

10.2. This Section shall not be construed to avoid or limit any of the other rights granted to the Company or duties assumed by the Employee pursuant to this agreement.

## 11. EMPLOYMENT AT WILL

11.1 Either party shall have the privilege to terminate the employment relationship at any time, with or without cause, by delivering verbal or written notice to the other party specifying the effective date of such termination.

11.2. If the employment relationship is terminated, and the Employee is later re-employed by the company, this Agreement will be applicable to such re-employment as if there had been no interruption of the employment relationship, without the necessity for the execution of a new agreement between the parties.

## 12. APPLICABLE LAW

12.1 This Agreement, and any controversies, claims, disputes or matters in questions arising out of or relating to this Agreement shall be construed, governed, and enforced in accordance with the laws of Florida.

## 13. EXCLUSIVE FORUM/JURY WAIVER

13.1 The Employee irrevocably agrees that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Florida, and the Employee agrees to the exclusive personal jurisdiction and venue of any court in Travis County, Texas and waives any defense thereto.

13.2 Each party hereto expressly waives the right to trial by jury in any lawsuit or proceeding relating to or arising in any way from this Agreement or Employee's Employment with Company.

Initialed
Company

6

Initialed
Employee

Exhibit 2 to Original Complaint                                    Page 6 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445            Dec. 16 2006 05:50PM  P7

### 14. ENTIRE AGREEMENT

14.1.  This Agreement with Exhibit A attached contains the entire Agreement between the parties. There are no representations, inducements, arrangements, promises, or agreements outstanding between them, either oral or written, other than those contained in this Agreement. This Agreement supersedes any prior employment agreement between the Employee and the Company or any of its affiliates or subsidiaries. Any provisions of this Agreement may only be changed or modified in a writing, which is signed by the party to be charged.

### 15. SUCCESSORS AND ASSIGNS

15.1  The parties to this Agreement expressly authorize that the restrictive covenants contained herein be enforceable by the Company's assignees and/or successors.

### 16. NOTICES

16.1  All notices to be given under this Agreement shall be given in writing by registered or certified mail addressed to the Company at 824 W 10th Street, Suite 202, Austin, TX 78701, and to the Employee addressed as shown below, or by hand delivery to either party. Either party may designate a different address by written notice to the other party. Notices to the Company, which are hand delivered, may only be delivered to Robert E. Kinney, Esq., 824 W 10th Street, Suite 202, Austin, TX 78701.

### 17. CAPTIONS AND TERMINOLOGY

17.1  The caption to each section herein are used for convenience and are not a part of this Agreement, or to be used in interpreting it. Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural.

### 18. WAIVER AND SURVIVAL

18.1  The failure of the Company to insist upon strict adherence or compliance by the Employee with any of the terms of this Agreement, on one or more occasions, shall not constitute a waiver, and shall not deprive the Company of the right to require compliance with such term.

### 19. SEVERABILITY

19.1  If any portion of this agreement is held invalid or unenforceable for any reason, such holding shall not affect any other portion of this Agreement. The remaining portions shall remain in full force and effect.
19.2  The parties to this agreement expressly authorize that the restrictive covenants contained herein be enforceable by Kinney Recruiting L.P. assignees and/or successors.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement. The Employee acknowledges receipt of an executed copy of this Agreement.

I THE EMPLOYEE, ACKNOWLEDGE THAT I HAVE HAD ADEQUATE OPPORTUNITY TO REVIEW THIS AGREEMENT PRIOR TO ACCEPTING EMPLOYMENT OR CHANGING MY POSITION AND THAT I AM SIGNING THIS AGREEMENT OF MY OWN

Initialed                                7                               Initialed
Company                                                                  Employee

Exhibit 2 to Original Complaint                                          Page 7 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445     Dec. 16 2006 05:51PM P8

FREE WILL, WITHOUT DURESS OR COERCION. I UNDERSTAND THAT THIS AGREEMENT RESTRICTS MY RIGHT TO DISCLOSE OR USE PROPRIETARY INFORMATION DURING OR SUBSEQUENT TO MY EMPLOYMENT WITH THE COMPANY, PROHIBITS ME FROM SOLICITING EMPLOYEES AND CUSTOMERS OF THE COMPANY FOR ONE (1) YEAR AFTER MY SERVICE IS TERMINATED FOR ANY REASON, AND REQUIRES ME TO PROVIDE LIQUIDATED DAMAGES TO THE COMPANY IF I VIOLATE CUSTOMER OR CANDIDATE NON-SOLICITATION PROVISIONS.

This Agreement shall be effective as of the first day of Employee's employment, namely: May 1, 2006.

Employee Signature

THE COMPANY

By: Robert E. Kinney, Esq.

PLEASE PRINT OR TYPE THE FOLLOWING:

Evan Jowers
Associate Recruiter's full name

16950 N. Bay Rd., #2514
Home Address

Sunny Isles    FL    33160
City           State  Zip

(917) 292 8657
Residence Telephone

4560619.2

Initialed Company     8     Initialed Employee

Exhibit 2 to Original Complaint     Page 8 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445         Dec. 16 2006 05:51PM P9

## ASSOCIATE RECRUITER EMPLOYMENT AGREEMENT "EXHIBIT A"
Dated as of: May 2006

1. **DEFINITIONS.**

    The following definitions shall be applicable to this Exhibit:

    1.1. "NET CASH-IN" is defined as the Employee's portion of all placement fees received and retained by the Company which result from the placement of candidates with clients of the Company and fees received for other services provided by the Company ("Other Services") through the Employee's efforts, less refunds, credits, adjustments of placement fees, split fees paid to others, and any expenses incurred by the Company in the collection of the placement fees. The Employee's portion will be determined by the Company for each placement and may be modified for any placement prior to the placement being made. The determination of the Employee's portion of retainers and engagement fees will be made when the Company has the information necessary to make the determination.

    1.2. "OFFICE NET CASH-IN" is defined as the cumulative NET CASH-IN for all of the Company employees under the supervision of the Employee within the Employee's office, including the Employee's own NET CASH-IN.

    1.3. "COMMISSION QUOTA" is defined as the sum equal to the total of the Employee's compensation paid as provided in Subsections 2.1 and 2.2 during each pay period. If the Employee fails to meet the Employee's COMMISSION QUOTA in any pay period, the COMMISSION QUOTA for the next pay period shall be increased by the amount of the deficit from the previous pay period.

    1.4. "NET COMMISSIONS" is defined as GROSS COMMISSIONS for a pay period less COMMISSION QUOTA.

2. **COMPENSATION.**

    The Employee's compensation for the services to be rendered hereunder shall be as follows:

    2.1. A salary of $3,000 per pay period, less applicable withholdings and deductions, paid monthly.

    2.2. "GROSS COMMISSIONS" shall be computed each pay period on NET CASH-IN for the calendar year pursuant to the following schedule:

    | Percentage of Commissions | Calendar Year Net Cash-In |
    |---|---|
    | 45% | Of the first $75,000 |
    | 50% | Of the next $75,000 |
    | 55% | Of the next $75,000 |
    | 60% | Of the next $75,000 |
    | 65% | Of the excess over $300,000 |

Initialed Company                                    Initialed Employee

Exhibit 2 to Original Complaint                    Page 9 of 11

FROM : INTRACOASTAL YACHT CLUB APTS     FAX NO. :3059483445         Dec. 16 2006 05:51PM P10

Where applicable, thresholds for percentage increases shall be based on OFFICE NET CASH-IN for the calendar year, while the actual commission calculation shall apply only to NET CASH-IN for the calendar year.

2.3. "NET COMMISSIONS" will be computed and paid each pay period. The Company, in its sole discretion, may postpone payment of a commission until the first regular pay date after the expiration of the guarantee period provided to the client by the Company.

3. ADVANCES.

3.1. The Company may from time to time grant to the Employee advances against the Employee's commissions and bonuses. Commissions for each pay period less all advances, if any, shall be paid to the Employee on or before the last day of the pay period following the close of said pay period. All monies paid to the Employee over and above the Employee's salary (including overtime compensation, if any) and commissions shall be deemed advances against commissions. Payments to the Employee which relate to actual or anticipated receipts from clients which are not or do not remain NET CASH-IN are recoupable.

4. COMPENSATION UPON TERMINATION.

4.1. If the Employee's employment is terminated for any reason other than those set forth in Subsection 4.3 of this Exhibit, the Employee will be paid commissions equal to thirty-five percent (35%) of NET CASH-IN received by the Company within thirty (30) calendar days after the effective date of the termination of employment that exceeds COMMISSION QUOTA, provided that the client has been invoiced by the Company on or before the effective date of the termination of employment, which commission will be further reduced by any other funds due the Company from the Employee.

4.2. The Employee acknowledges that the Employee would normally have certain tasks to perform subsequent to the placement and prior to and subsequent to the Company's invoicing of a client. Since the Company will be required to perform those tasks, the Employee agrees that the compensation to be paid pursuant to Subsection 4.1 is fair and equitable.

4.3. If the employment is terminated due to a breach or threatened breach by the Employee of the provisions of the Employee's Agreement relating to the duties of the Employee or to the restrictions relating to non-disclosure, non-solicitation, or other restrictive covenants, or if, subsequent to the effective date of termination of employment, the Employee breaches or threatens to breach any of such provisions, then the Employee will only be paid the Employee's commission based on the NET CASH-IN actually received by the Company on or before the effective date of termination of employment that exceeds COMMISSION QUOTA, which commissions will be further reduced by any other funds due the Company from the Employee.

4.4. Payments to the Employee under Subsections 4.1 and 4.3 of this Exhibit will not be due until thirty (30) calendar days after the expiration of the guarantee periods provided to the client by the Company.

Initialed
Company

Initialed
Employee

Exhibit 2 to Original Complaint                                  Page 10 of 11

FROM : INTRACOASTAL YACHT CLUB APTS    FAX NO. : 3059483445    Dec. 16 2006 05:51PM P11

4.5. Should there be any Company advances still owed by the Employee at the time of the Employee's termination, the Employee authorizes the Company to deduct the advances from Employee's final paycheck, even if this causes Employee's total pay to be below the minimum wage for the final paycheck.

5. **MISCELLANEOUS.**

5.1. The Employee's compensation may be modified from time to time as the Company, in its sole discretion, deems appropriate, provided that no such modification may be applied retroactively.

4580825.2

_RK_
Initialed
Company

_EPO_
Initialed
Employee

Exhibit 2 to Original Complaint                Page 11 of 11