FILED

December 26, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
CC
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

COUNSEL HOLDINGS, INC.

       Plaintiff

    v.

EVAN P. JOWERS, LEGIS VENTURES
(HK) COMPANY LIMITED, JOWERS
VARGAS LLC, and JOWERS LANGER
LLC,

       Defendants.

**Civil Action No. 1:23-CV-711**

### DEFENDANT EVAN P. JOWERS'S
### MOTION TO DISMISS

Defendants Evan P. Jowers ("**Jowers**") moves to dismiss the claims asserted against Mr. Jowers in the Original Complaint for Declaratory and Injunctive Relief (the "**Complaint**") filed by Plaintiff Counsel Holdings, Inc., formerly known as MWK Recruiting, inc. ("**MWK**" or "**Counsel**") for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).

## PRELIMINARY STATEMENT

MWK/Counsel, which is a corporation controlled by Robert Kinney ("Kinney") is suing Evan Jowers in the United States District Court for the Western District of Texas. As the Court may recall, the underlying litigation bearing case number 1:18-cv-00444 (the "First Lawsuit") that gave rise to this case (the "Collateral Proceedings") involves a litigious ex-employer, attorney recruiter, and who is actively moonlighting as a consumer debt collector and unlicensed lawyer in the State of Florida, who is using this Collateral Proceedings to harass Evan P. Jowers. Further, Mr. Kinney has, through high level political connections in Hong Kong, terrorized Mr. Jowers and his colleagues and partners, by getting the Independent Commission Against Corruption in Hong Kong[1] to start a secret investigation on bogus claims of bribery and corruption, based only on the First Lawsuit. Mr. Jowers co-defendant in the First Lawsuit, Alejandro Vargas, was forced to escape Hong Kong, indefinitely and potentially permanently, with three hours notice with his wife and child, who are native Hong Kong citizens, under threat of arrest. Mr. Jowers was tipped off by a whistleblower within the ICAC on the bogus investigation in January 2023 and immediately left Hong Kong then to avoid a potential arrest on the bogus corruption / bribery accusations. Sadly, Kinney's bad faith actions have forced everyone associated with Hong Kong to suddenly leave our home base of operations on an indefinite and long-term basis. These Collateral Proceedings, which targets Jowers and seeks to get a second bite at the apple against companies Mr. Jowers is associated with, including Legis Ventures (HK) Company Limited, which was dismissed with prejudice in the First Lawsuit.

---

[1] The Independent Commission Against Corruption (ICAC) is the statutory independent anti-corruption body of Hong Kong with the primary objective of combating corruption in both the public and private sectors. It operates independently from the Hong Kong government and law enforcement agencies and the investigation are done in secret, usually without the subject being aware prior to arrest. It's a highly controversial agency due to the secrecy and lack of due process. The subjects are almost always citizens of China who are high level politicians or high net worth business leaders suspected of bribing government officials.

**DEFENDANTS EVAN P. JOWERS'S MOTION TO DISMISS—Page 1**

Fortunately, the Court and Mr. Jowers are not doomed to relitigate this case because "[t]he doctrine of res judicata contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). Moreover, MWK has completely failed to satisfy the Rule 12(b)(6) standards and state sufficient ultimate facts to demonstrate that any of the named defendants are Mr. Jowers's alter ego, or otherwise pierce a corporate veil.

Moreover, the Court lacks personal jurisdiction over Mr. Jowers. At all relevant times, Jowers worked primarily in Hong Kong and the State of Florida. The Complaint fails does not allege a single act that Mr. Jowers ever took in Texas. While Mr. Jowers accepts that the Court found personal jurisdiction in the First Lawsuit—given that these are Collateral Proceedings attempting to modify the original judgment—in the utmost caution, he again raises it so as to avoid waiving the argument in the First Lawsuit.

Furthermore, the Complaint fails to state a claim. It is a hodgepodge of conclusory allegations that fail to state a plausible claim—let alone satisfy the heightened pleading to demonstrate fraud—that fails to satisfy the *Twiqbal* and Rule 9(b) pleading standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the reasons set forth in full below, the Complaint must be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

From April 2006 until December 2016, Jowers was an attorney recruiter and employee of Kinney Recruiting's various entities ("Kinney Recruiting"), in an attorney placement business at which Robert Kinney is the principal officer and manager. While employed there, he was based in Miami, Florida until June 2015 and was based in Hong Kong from June 2015 until his resignation in December 2016. Jowers recruited attorneys for placements at large U.S. and U.K.

based law firms. Over time, acting on his own initiative, Jowers began to focus his efforts almost exclusively on placing candidates in such firms' Asian offices.

In December 2006, eight months after starting at Kinney Recruiting with a promise of no non-compete agreement would ever be required, Jowers was forced to sign a particularly draconian non-compete agreement ("Employment Agreement"), under threat of losing pending commissions of over $400,000 and a threat and promise that if Jowers didn't sign, Kinney would sue, defame and bankrupt Jowers with legal fees. The Employment Agreement is governed by Florida law, and contains certain restrictive covenants, including an indefinite and draconian confidentiality provision and non-solicitation covenants purporting to require him not to solicit or take phone calls from any of the employees or candidates or clients of Kinney Recruiting, L.P. for a period of 1 year after the termination of his employment. The 1 year period starts over again for Jowers' lifetime if any contact with candidates or clients happen before a full year is up. Further, Kinney is entitled to 100% of the revenue of any recruiting firm that Jowers is associated with earns on placements of alleged Kinney candidates or placements at Kinney clients, which includes most major US law firms. Jowers must reimburse Kinney 100% of such revenue, even if he had nothing to do with the particular placement that was made by a colleague and all the commissions wen to that colleague. Jowers' commission rate was 65% but Kinney never paid Jowers his contractually required commission on any of the hundreds of placements he made at Kinney Recruiting.

In June 2015, Kinney relocated Jowers to Hong Kong on a permanent basis, where he worked on behalf of Kinney Recruiting Limited, a Hong Kong limited company. However, Kinney stopped Jowers' legally required Hong Kong work visa application and process, right as Jowers moved to Hong Kong. After many warnings to Kinney from Jowers that he could not

remain in Hong Kong without a work visa, working illegally and that he was under threat of arrest by the Hong Kong authorities, Jowers finally resigned from Kinney Recruiting in December 2016. Kinney promised Jowers, and various Hong Kong authorities, that he would complete the legally required Hong Kong work visa process right away (only his signature was needed the entire time) in dozens of emails, texts and oral conversations during Jowers' 18 months of employment in Hong Kong. In December 2016, Kinney admitted to Jowers in an email that he was never getting Jowers a work visa, that it was a ruse the entire time. Jowers also was informed in late 2016 that his former colleague at Kinney Recruiting, based in Hong Kong, Alexis Lamb, was forced by Kinney to work illegally without a work visa for around 18 months. Jowers had no choice but to leave Kinney Recruiting or else face arrest in Hong Kong. Jowers became an attorney recruiter for Legis Ventures (HK) Company Limited in December 2016. That company is marketed as Jowers Vargas and Jowers is one of 3 co-founders. In 2020 Jowers co-founded Jowers Vargas LLC, a Florida company. There was also a Florida company formed in 2018 called Jowers Langer LLC, but that company has not been in operation for several years now.

MWK filed its Original Petition in the First Lawsuit on March 27, 2017, in state district court in Travis County, Texas, which included a request for injunctive relief. Although citations (i.e., Texas summons) were issued. On May 25, 2018, Jowers timely removed the case to this Court.

## APPLICABLE LEGAL STANDARDS

### A.  A Complaint May Be Dismissed If An Affirmative Defense Appears On Its Face

In deciding a motion to dismiss under Rule 12(b)(6), the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage*

*Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Moreover, "taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

However, in ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look beyond the pleadings, *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994), and must "accept[] as true those well-pleaded factual allegations in the complaint," *Test Masters,* 428 F.3d at 570. In addition to facts alleged in the pleadings, however, the district court "may also consider matters of which [it] may take judicial notice." *Lovelace,* 78 F.3d at 1017-18. And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris,* 500 F.3d at 461 n.9; *see also Cinel,* 15 F.3d at 1343 n.6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."). If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.,* 20 F.3d 1362, 1366 (5th Cir. 1994). *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008). Thus, if the basis of a complaint is based on a previous judgment, dismissal is warranted as long as the previous judgment is included in the original pleadings. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.,* 20 F.3d at 1366.

> The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 436 (5th Cir. 2000) (internal citation omitted).

> Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir.2004) (quoting *In re Southmark Corp*., 163 F.3d 925, 934 (5th Cir.1999)). The test for res judicata has four elements: (1)

the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.* (citation omitted). In order to determine whether both suits involve the same cause of action, this Court uses the transactional test. *Id.*

Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. *Id.* at 395–96 (quotation marks and citations omitted). What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Id.* at 396 (quoting Restatement (Second) of Judgments § 24(2) (1982)). If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. *New York Life Insur. Co. v. Gillispie,* 203 F.3d 384, 387 (5th Cir.2000). The critical issue is whether the two actions are based on the "same nucleus of operative facts." *Id.; see also Davis v. Dallas Area Rapid Transit,* 383 F.3d 309 (5th Cir.2004).

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)

## B. Standard Under Rule 12(b)(2).

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because Texas's long-arm statute extends to the limits of due process, the principal question is whether jurisdiction is consistent with the U.S. Constitution. *Id.*

The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). To do so, the plaintiff must show both that the nonresident defendant "purposefully availed [itself] of the

benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and that "the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Sufficient minimum contacts may give rise to either specific or general jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mink*, 190 F.3d at 335. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.*

### C.  Standard Under Rule 12(b)(6).

As set forth in *Twombly* and *Iqbal*, Rule 8 requires that a pleading contain sufficient facts to, if accepted as true, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than threadbare, unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### ARGUMENT AND AUTHORITIES

### A.  Counsel's Complaint Is Barred By Claim Preclusion and Res Judicata

In its Complaint, Counsel Holdings bases their legal action on a previous action in the before this Court. According to Counsel Holdings' own filing, "through this lawsuit, Plaintiff asks the Court to disregard the corporate fiction regarding these three defendant entities based on well-established evidence from the 2018 Action and hold each of the Defendants jointly and

severally liable for the Prior Judgment" Original Complaint for Declaratory and Injunctive Relief at 2." Exhibit 1 of Original Complaint at *1.

While a court cannot "look beyond the pleadings," an affirmative defense may be raised if the Court has "judicial notice" of them. Counsel Holdings notified the Court in their own pleadings and of the First Lawsuit and has all but admitted that they arise from "same nucleus of operative facts." *Test Masters Educ. Servs., Inc.* 428 F.3d at 571; *See Cinel*, 15 F. 3d. At 1341, *Lovelace,* 78 F.3d at 1017-18; *MWK Recruiting, Inc. vs. Jowers*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *3 (W.D. Tex. Dec. 8, 2020) ("A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.').

Since Counsel Holdings provided the Court with judicial notice of their previous judgment by referencing, suing Mr. Jowers based on the First Lawsuit's judgment, otherwise incorporating them into its complaint, the affirmative defenses of claim preclusion, res judicata and collateral estoppel appears on the face of the pleadings.

In Texas, "[r]es judicata, or claim preclusion, has four requirements: (1) that the parties be identical or in privity; (2) that the prior judgment be rendered by a court of competent jurisdiction; (3) that the prior action be concluded by a final judgment on the merits; and (4) that the same claim be involved in both actions." *Test Masters,* 428 F.3d at 571. "Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). "The parties need not have actually litigated the claim for claim preclusion to still apply. *See Crawford v. San Marcos Consol. Indep. Sch. Dist.*, 637 F. App'x 808, 812 (5th Cir. 2016) ("Claim preclusion forecloses any litigation of matters that have never been litigated on the ground that they ***should***

***have been advanced in an earlier suit.*** " (internal quotation omitted))". *Transamerica Annuity Serv. Corp. v. Symetra Life Ins. Co.*, No. 4:16-CV-1426, 2018 WL 4620712, at *11 (S.D. Tex. Sept. 19, 2018). Obviously, if Counsel wanted a judgment against Mr. Jowers and the companies at issue, he should have advanced that theory in the First Lawsuit. It chose not to pursue such a remedy—and now it is foreclosed. *See Transamerica Annuity Serv. Corp.* Co., No. 4:16-CV-1426, 2018 WL 4620712, at *12. ("That Symetra did not obtain a specific jury finding on whether Rapid is an alter ego of A.M.Y. or FinServ does not prevent claim preclusion from applying in this case. Because Symetra Life and Symetra Assigned Benefits had the opportunity to fully and fairly litigate this issue in federal court, the alter ego and fraudulent transfer defenses are barred by claim preclusion.").

The first three elements are easily met as (1) the parties are either in privity or identical to those in the previous lawsuit (2) the prior judgment was rendered by this Court, (3) the prior action has concluded and Plaintiffs had multiple opportunities to try the case or in the alternative to pursue an appeal of this Court's final judgment. Instead of doing so, it has opted to collaterally attack this Court's final judgment and otherwise run-around United States District Judge Pitman's final adjudication of this case (purportedly in hopes of getting a different judicial officer assigned to this case).

The Fourth element is fulfilled because Counsel should have, could have, and otherwise attempted to raise (before it was dismissed for lack of personal jurisdiction as to Legis Ventures). The Fifth Circuit uses the "transactional test" to "determine whether two suits involve the same claims or causes of action. Under the transactional test, the critical issue is whether the prior suit and the current suit are based on the "same nucleus of operative facts. If the prior and current suits involve the same transaction or series of connected transactions, the two suits involve the

same claims or causes of action. Courts should consider whether the facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). This case literally involves the same claims (because it is based on the same exact transactions or series of transactions constituting what Counsel contended were a misappropriation of trade secrets, violation of a non-compete agreement, and breach of personal loans) and is collaterally attacking the First Lawsuit's Final Judgment—and constitutes Counsel's attempts to demonstrate that the prior judgment was in error because they believe that Legis Ventures and Jowers Langer should have been held jointly and severally liable for it. *See Transamerica Annuity Serv. Corp.* Co., No. 4:16-CV-1426, 2018 WL 4620712, at *12.

Furthermore, as to Legis, this issue was litigation. The Court wrote:

"Like Jowers, MWK does not contend that Vargas is subject to this Court's general personal jurisdiction.11 (See 2d Am. Compl., Dkt. 80, ¶¶ 131–35). But unlike Jowers, MWK does not argue that Vargas is subject to this Court's specific personal jurisdiction. (Id.). MWK only argues that jurisdiction is proper by attributing Legis Ventures's contacts to him. (See id.; Resp., Dkt. 85, at 22– 23). Specifically, MWK alleges that the Court has jurisdiction over Vargas because "Legis is the alter ego of Vargas," Legis was formed and used for illegal purposes in violation of 18 U.S.C. § 1831, and Legis has been used as a sham to perpetuate fraud. (2d Am. Compl., Dkt. 80, ¶ 131). MWK also argues, briefly and without explanation, that it is suing Vargas for his own conduct when he formed and used Legis Ventures for "illegal purposes" and when he assisted with the theft of MWK's property. (2d Am. Compl., Dkt. 80, ¶ 135; Resp., Dkt. 85, at 23). As already stated, MWK has not shown that Legis Ventures has sufficient minimum contacts with the United States to support personal jurisdiction. Therefore, even assuming Legis Ventures is Vargas's alter ego, there would be insufficient contacts to support personal jurisdiction." *See* Order on Motion to Dismiss SAC, ¶ 18.

While Counsel received a jurisdictional ruling instead of an official adjudication, a jurisdictional ruling is enough to apply res judicata. "Although a jurisdictional ruling is

technically not an adjudication on the merits, '[i]t has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Comer v. Murphy Oil USA*, 718 F.3d 460, 469 (5th Cir. 2013) (internal citations omitted). Here, since the same claim is involved in the previous action in 2018 and now, Plaintiffs claims are barred under res judicata and must be dismissed. *See id*.

## B.  The Court Lacks Personal Jurisdiction Over Defendants.

### 1.  *Defendants Are Not Subject to the Court's General Jurisdiction.*

Mr. Jowers do not have the necessary contacts with Texas to permit the Court to exercise general jurisdiction over them. The Complaint does not allege and Mr. Jowers certainly do not have "continuous and systematic" contacts with Texas sufficient to render them "essentially at home" in Texas. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). Under *Daimler*, an entity's place of incorporation and the principal place of business are the "paradigm … bases for general jurisdiction." *Id.* at 760 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924.

Here, Jowers is a non-resident of Texas and a citizen of Florida, where he maintains a physical address. The Complaint itself admits these basic facts. Neither Jowers nor Legis Ventures has any place of business, office, or other facility in Texas, any assets in Texas, or any employees or agents in Texas.

In sum, Defendants have no presence in Texas that could support the exercise of general jurisdiction. Certainly, neither of Defendants has "continuous and systematic" Texas contacts.

2.  *Mr. Jowers is Not Subject to the Court's Specific Jurisdiction.*

Additionally, Mr. Jowers us not subject to specific jurisdiction in Texas because none of Counsel's  alleged claims arises out of any purposeful contact by Defendants with Texas.

To show specific jurisdiction, "[i]t is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010). "The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* Communications with a person in the forum, whether by phone, e-mail, or mail, are not sufficient. *See Bonner v. Triple-S Mgmt. Corp.*, 661 Fed. Appx. 820, 822–23 (5th Cir. 2016); *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007). These rest "on nothing but the mere fortuity that the plaintiff happens to be a resident of the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1146–47 (5th Cir. 1985).

***First***, Mr. Jowers has not taken *any* relevant action in the State of Texas. Mr. Jowers was employed in Miami, Florida by Kinney Recruiting, LLC until June 2015, when he relocated to Hong Kong to become an attorney recruiter under contract with Kinney Recruiting Hong Kong. Jowers Decl. ¶ 2. In December 2016, Jowers terminated his relationship with Kinney Recruiting Hong Kong and subsequently became an attorney recruiter with Legis Ventures. *Id.* ¶ 3. Mr. Jowers recruits candidates almost exclusively in Asia. *Id.* Since well before leaving his employment with Kinney Recruiting, Jowers has not contacted any attorney candidate in Texas, whether on behalf of Kinney Recruiting, LLC, Kinney Recruiting Hong Kong, Legis Ventures, or otherwise, for placement anywhere, nor has he has placed a candidate at any law office in

Texas. *Id.* At no relevant time was Jowers in Texas, nor did he have anything to with Texas. *See id.* ¶¶ 3, 6–8.

Similarly, Legis Ventures is a recruiting firm that primarily places candidates at large law U.S. and U.K. based law firms in their offices in Asia. *Id.* ¶ 7. It does not have, nor has it ever had, any office, facility, place of business, or operations in Texas. *See id.* ¶¶ 6–7. Further, it has never placed a candidate at any law office located in Texas, or even at any law firm that is headquartered in Texas. *Id.* ¶ 7. Nor has Legis Ventures ever recruited any attorney located in Texas for placement at any law office in Asia—it has had no phone conversations, no meetings, and no email exchanges with any attorney candidate in Texas. *See id.*

**Second**, contrary to MWK's claim in the Complaint, even if MWK were a party to any of the relevant agreements, it could not rely on them because they have no provision requiring dispute resolution in Texas. On the contrary, they refer only to the "venue" for any dispute being in Travis County. Under Texas law, "[t]he distinction between a forum selection clause and a venue selection clause is critical." *Liu v. CiCi Enters., L.P.*, No. 14–05–00827–CV, 2007 WL 43816, at *2–3, (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.). "A 'forum'-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a 'venue'-selection agreement chooses a particular county or court within that state or sovereign." *In re Great Lakes Dredge & Dock Co., L.L.C.*, 251 S.W.3d 68, 73–74 (Tex. App.—Corpus Christi 2008, no pet.). An agreement that expressly refers to a particular "venue" is "an unambiguous venue selection clause." *See Liu*, 200 WL 43816 at *3. For these reasons, the venue selection clauses in the alleged loan documents are not forum selection clauses.

Further, Jowers's Employment Agreement requires that "the **exclusive forum** for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in

the state or federal courts in Florida ….” While the same provision does refer to venue in Travis County, courts in Texas treat questions of forum selection and venue selection separately. *See Liu*, 200 WL 43816 at *3. The venue provision comes only after an express provision selecting Florida as the sole location for the resolution of disputes and is therefore subject to the foregoing clause. While this is not ambiguous on its face, the obvious reason for the slight discrepancy is that Robert Kinney—the principal officer and manager of Kinney Recruiting, LLC, Kinney Recruiting Hong Kong, and MWK and the undisputed drafter of the provision—changed the agreement to select Florida instead of the default of Texas, but simply forgot to change this particular portion of the clause. Additionally, the Employment Agreement provides that it is governed by Florida law, which militates in favor of a finding that the parties intended for disputes to be heard in Florida. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (recognizing importance of Florida choice of law clause in determining whether personal jurisdiction was proper and holding that Court of Appeals).

And, even if the provision were ambiguous, Texas courts construe ambiguous provisions against the drafter, using it as “a tie-breaking device [] to prevent arbitrary decisions when all other methods of interpretation and construction prove unsatisfactory.” *Evergreen Nat. Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 677 (Tex. App.—Austin 2003, no pet.). As the Amended Petition admits, Robert Kinney was indisputably the drafter of Jowers’s Employment Agreement. Thus, if the Court employs this “tie-breaking device,” it must construe this provision in favor of the exclusive forum selection of Florida, particularly where that statement is much clearer than the subsequent statement concerning Travis County in the Employment Agreement.

### C. Counsel Has Failed to State a Claim Upon Which Relief Can Be Granted.

    *1. Count I*

        *a. Counsel has failed to state a claim to pierce the corporate veil under either Texas or Florida Law and satisfy the heightened pleading standard for fraud*

The Fifth Circuit has repeatedly warned that "the alter ego doctrine and piercing of the corporate veil are truly exceptional doctrines, reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a **fraud**, to shun personal liability, or to encompass other truly unique situations." *Matter of Multiponics, Inc.*, 622 F.2d 709, 724–25 (5th Cir. 1980). Moreover, Counsel must plead sufficient ultimate facts to show the existence of an alter ego relationship "that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent **fraud** or injustice." *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 347–48 (5th Cir. 2015) (citation omitted) (emphasis added).

As more thoroughly discussed *infra*, under both Florida and Texas law, a plaintiff must satisfy the heightened pleading standard to demonstrate fraud. *See Braswell v. Ryan Investments, Ltd.*, 989 So. 2d 38, 38–39 (Fla. 3d DCA 2008); *Sparling v. Doyle*, EP-13-CV-00323-DCG, at *10-11 (W.D. Tex. Oct. 23, 2014) (citing TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2))."Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As such, "allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8." This standard 'stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." The rule is also "designed 'to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs." *See MWK Recruiting, Inc. vs. Jowers*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *3 (W.D. Tex. Dec. 8, 2020).

Furthermore, even if the Rule 9(b) fraud pleading standards did not apply, under *Twombly* and *Iqbal*, Rule 8 requires that a pleading contain sufficient facts to, if accepted as true, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than threadbare, unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Counsel has completely failed to plead sufficient ultimate facts to satisfy either the *Twiqbal* or Rule 9(b) standards.

Counsel failed (1) specify each action alleged to have been misleading, i.e., contended to be fraudulent; (2) identify the actors; (3) state where and when the actions were taken; (4) plead with particularity the contents of the actions that constituted fraud; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the action was misleading, i.e., why the action is fraudulent. *See MWK Recruiting, Inc. vs Jowers*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *3 (W.D. Tex. Dec. 8, 2020. For this reason, it has failed to state a claim or otherwise reverse pierce the corporate veil.

Counsel has brought two claims against Mr. Jowers to: (1) "reverse pierce" the corporate veil by way of declaratory judgment by claiming that the other defendants are his alter ego,  and (2) seeking an injunction against them all based on their allegations that they are alter egos. "Claims for declaratory judgment in federal court are considered under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *MWK Recruiting, Inc. vs. Jowers*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *9 (W.D. Tex. Dec. 8, 2020). ). Generally speaking, "Piercing the corporate veil

is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts." *Yinguang Chem. Ind. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010). Counsel is attempting to "reverse pierce" the corporate veil under *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-44 (5th Cir.1990) (in federal tax liability context, recognizing that the Government can reverse pierce based on a finding of alter egos) and an unrelated non-binding state case with discusses the theory of reverse piercing the corporate veil in the context of personal jurisdiction.

First, Florida law applies to this determination since the employment agreement at issue applies Florida law and Mr. Jowers is a Florida citizen. Moreover, Jowers Vargas, LLC and Jowers Langer LLC are incorporated in and are therefore corporate citizens of the State of Florida. Under Florida law,

> A corporation's veil will be pierced where the corporation's controlling shareholder formed or used the corporation to **defraud** creditors by evading liability for preexisting obligations. The usual result of piercing the corporate veil is that the controlling shareholder or shareholders become liable for the corporate liabilities. The remedy is equally available, however, to hold the corporation liable for the debts of controlling shareholders where the shareholders have **formed or used** the corporation to secrete assets and thereby **avoid preexisting personal liability**.

*Braswell v. Ryan Investments, Ltd.*, 989 So. 2d 38, 38–39 (Fla. 3d DCA 2008).

In *Braswell*, a jilted ex-wife brought suit against her deceased ex-husband's corporate to enforce approximately $24 million in judgments under a marital settlement agreement dated from the year 2000. *Id.* She did so because she alleged that he ex-husband had put their marital "property in Ryan Investments' name [in 1997] as a means of defrauding her. She thus invoked the so-called "outsider reverse corporate piercing[.]" *Id.* The Florida Third District Court of Appeal affirmed the lower court's judgment against the ex-wife on the ground that the remedy of reverse piercing is only available "where the shareholders have formed or used the corporation to

**DEFENDANTS EVAN P. JOWERS'S MOTION TO DISMISS—Page 17**

secrete assets and thereby avoid *preexisting* personal liability," (emphasis added); and (b) that the emphasized condition was not satisfied in this case. There is no question that the act of taking title in the corporate name well preceded the existence of the claims and obligations sued upon rather than vice versa. *Braswell*, 989 So. 2d at 39.

In this case, a jilted-ex employer brought suit against Mr. Jowers and his co-defendants because he alleges that he used them "to evade his obligation to produce documents and things that were in his possession, custody, or control and were responsive to discovery requests, necessitating a motion to compel their production." Compl. at P 26. But like in *Braswell,* on its face, this obligation was not preexisting and liability was not preexisting. Braswell v. Ryan Investments, Ltd., 989 So. 2d 38, 38 (Fla. 3d DCA 2008).

Second, if Texas law applied, a court may pierce the corporate veil "only if (1) actual **fraud** is shown and (2) it was **perpetrated primarily for the direct personal benefit** of the corporation's holder." *Sparling v. Doyle*, EP-13-CV-00323-DCG, at *10-11 (W.D. Tex. Oct. 23, 2014) (citing TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2)). *Id.* For reasons stated *supra*, Counsel has failed to satisfy the heightened pleadings standards to plead fraud with specificity. Instead it impermissibly parroted legal conclusions. *See MWK Recruiting, Inc. vs. Jowers*, No. 1:18-CV-444-RP, 2020 WL 7229977, at *3 (W.D. Tex. Dec. 8, 2020). Indeed, it further failed to satisfy the second prong of that analysis to show that whatever heretofore undescribed acts it claims were fraudulent were done primarily for the direct personal benefit of Mr. Jowers. For the foregoing reasons, this Court should dismiss this request for declaratory relief with prejudice.

     *2.  Count II*
          *a.  Injunctive Relief is not a separate cause of action, and even if it was, there harm is reparable on the face of the Complaint*

"Generally, a request for injunctive relief is not considered an independent cause of action, but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims." *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012).

> In other words, although a request for injunctive relief arises out of a cause of action, the remedy sought and the cause of action itself are "separate and distinct*." See United States v. Smelser*, 87 F.2d 799, 801 (5th Cir.1937); *see also Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (explaining that the question of "whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive"); *W. Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc.*, 91 Fed.Appx. 901, 904 (5th Cir.2003) (distinguishing between equitable remedies and causes of action, and noting that equitable remedies are unavailable in the absence of a cognizable cause of action); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir.2004) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action ... regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract ... [A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise."); *Williams v. Walsh*, 558 F.2d 667, 670–71 (2d Cir.1977) ("In other words, a cause of action is generally established by showing the existence of a right held by the plaintiff and a breach of that right by the defendant. But, most definitely, the cause of action is something distinct from the remedy or the relief sought.").

*Id.*

Even if the underlying request for declaratory relief was not barred by claim preclusion and res judicata (it is), the Court had personal jurisdiction over Mr. Jowers (it does not), and Counsel stated sufficient ultimate facts meet its pleading burdens under Rule 9(b) and *Twiqbal* (it did not), then this claim must be dismissed because a request for injunctive relief arises out of a cause of action, the remedy sought and the cause of action itself are "separate and distinct." As

pled, Counsel has entitlement to injunctive relief against Mr. Jowers even if it demonstrates that the other companies are his alter ego (which they are not).

And furthermore, Counsel's requests for injunctive relief are limited to cases where the claimant will suffer irreparable harm. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). In the Fifth Circuit, it is "well-established that an injury is irreparable only if it cannot be undone through monetary remedies." *Id.* Counsel literally requests that the Court enter an injunction under the "Prior Judgment [**which is monetary in nature,** *i.e.,* **the sum of $3,640,132.60**] has been satisfied" Compl. at P. 2; 11. Because it has admitted that its injuries reparable by way of payment of $3,640,132.60, it is therefore not entitled to the injunctive relief. For the foregoing reasons, this "count" is wholly frivolous, devoid of merit, and should be dismissed with prejudice.

3. *Count III: Attorneys Fees*
   a. *A request for attorneys fees is not a separate count. And even if it was, it is devoid of any facts to demonstrate that it is entitled to such relief.*

Much like a request for injunctive relief, a request for attorneys fees is not a separate count. It "require[s] an inquiry separate from the decision on the merits" and "is uniquely separable from the cause of action to be proved at trial." *Zimmerman v. City of Austin, Texas*, 969 F.3d 564, 568 (5th Cir. 2020). Counsel wrote that under "§ 37.009 of the Texas Civil Practice and Remedies Code and other applicable law, Plaintiff seeks recovery of its attorneys' fees and costs from Defendants." Compl. at P. 13. It has generally failed to plead any facts to support this bald averment of entitlement to attorneys fees, and it is unclear why it has asked for fees under this provision of the Texas Code. Section 37.004(a) states:

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or

validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Setting aside all of the foregoing dispositive issues with Counsel's claims in this Collateral Proceeding (of which there are many), under no circumstances is it entitled to attorneys fees from Mr. Jowers because this Court has already made such a "declaration of rights, status, or other legal relations" in the First Lawsuit.

## CONCLUSION

For the reasons set forth above, the Court should dismiss all of Counsel's claims against Mr. Jowers. Mr. Jowers also request all further relief to which he may be entitled.

Dated: December 26, 2023.        Respectfully submitted,

                                 By: /s/Evan Jowers
                                 *Pro Se*
                                 Email: evan@jowersvargas.com
                                 Phone: 917-292-8675

## CERTIFICATE OF COMPLIANCE

To the extent that artificial intelligence has been used to help draft this motion, all citations and legal analysis, have been reviewed by a human. *See* Notice of Proposed Amendment to 5th Cir. R. 32.3.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 26, 2023, a true and accurate copy of the foregoing document was served via the Court's drop box, return receipt requested to all counsel of record.

                                 *Evan Jowers*
                                 Evan Jowers